IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LISA D. WHITNEY, | ) | |
| | ) | |
| Plaintiff, | ) | CV-06-1858-AA |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

AIKEN, Judge:

## **INTRODUCTION**

Plaintiff Lisa Whitney brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's decision is affirmed and the case is dismissed.

1 - OPINION AND ORDER

## BACKGROUND

Whitney was born June 12, 1975. Tr. 59.[1] She attained a general equivalency degree (GED) and worked as a childcare worker, housekeeper, prep cook/dishwasher and production worker. Tr. 65, 70. Whitney filed for disability on February 25, 2003, alleging disability from June 8, 2001, due to major depressive disorder, anxiety, and post traumatic stress disorder (PTSD). Tr. 59, 63-72. Her application was denied initially and on reconsideration. Whitney failed to appear at an administrative hearing on July 19, 2005, and her hearing request was dismissed on September 20, 2005. She appealed the dismissal to the Appeals Council. The Appeals Council vacated the dismissal and remanded the case back to the Administrative Law Judge (ALJ) finding that a decision on the record could be made because the claimant's attorney was present at the July 19, 2005, hearing. A hearing on March 17, 2006 ,was continued in order to obtain a consultative psychological evaluation. Whitney failed to appear at the supplemental hearing on August 15, 2006, however, her attorney appeared. The ALJ issued a decision on the record on August 25, 2006, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has established a sequential process

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity (SGA). If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.* At step three, the ALJ determines whether a severe impairment meets or equals a "listed" impairment found in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's severe impairment meets or equals a listed impairment, she is disabled. 20 C.F.R. § 416.920(d).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. § 416.945; Social Security Ruling (SSR) 96-8p. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work she has done in the past. If the ALJ determines that she retains the ability to perform her past work, the Commissioner will find the claimant not disabled. 20 C.F.R. § 416.920(f). At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. § 416.966. The burden of production shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. *Id.,* 20 C.F.R. § 416.920(e), (g).

## THE ALJ's FINDINGS

The ALJ found at step one that Whitney had not engaged in SGA during the review period. Tr. 20. He found Whitney had medically determinable impairments of dysthymia and generalized anxiety order. *Id.* The ALJ found Whitney had no impairment or combination of impairments that were severe. *Id.* The ALJ determined Whitney was not disabled within the meaning of the Social Security Act. Tr. 23.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility and resolving conflicts in the evidence. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Morgan v. Commissioner of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

## DISCUSSION

Whitney alleges the ALJ erred in assessing her physical condition. She further alleges the ALJ erred in determining the severity of all her impairments.

**I.     Step Two Determination**

Whitney contends the ALJ erred in finding she did not have any physical impairments. She further contends the ALJ improperly evaluated the severity of the combination of her impairments. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments that meets the duration requirement. If there is no finding of severe impairment, the Commissioner will find the claimant "not disabled" without continuing the remaining steps of the sequential process. 20 C.F.R. § 416.920(a)(4)(ii); SSR 85-28. Whitney bears the burden of proving that her impairments are severe. 20 C.F.R. § 416.912; *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). An impairment is severe if it significantly limits the ability to do basic work activities. These include physical functions, such as seeing, hearing, speaking, walking, standing and sitting. These also include mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 C.F.R. § 416.921(b). The issue is whether the ALJ properly assessed whether there were functional limitations from any impairment or combination of impairments that affect Whitney's ability to work.

**A. Physical Impairments**

Whitney alleges the ALJ failed to consider her physical limitations. Whitney contends, contrary to the ALJ's findings, that she alleged physical impairments on her disability report. The ALJ found,

> The claimant has been treated for gynecological problems that have been treated successfully. She also has had treatment for transient illness and other routine medical care. She did not allege physical problems on her disability report. [Exhibit IE]. Additionally, the record does not suggest the presence of any physical impairment(s) likely to affect the claimant's ability to work. The DDS examiner's found no medically determinable physical impairment, an opinion supported by the record. Accordingly, the undersigned so finds.

5 - OPINION AND ORDER

Tr. 20.

Whitney filed a disability report on February 25, 2003. Tr. 63-72. The first question in Section 2 asks, " What are the illnesses, injuries or conditions that limit your ability to work?" Whitney responded, "major depressive disorder, anxiety, and post traumatic stress disorder." Tr. 64. In response to the question on how these conditions limit her ability to work Whitney responded, "tired all the time, no motivation, anxious, paranoid, anger outbursts/sadness outbursts. *Id.* Under the medical records section of the report Whitney lists her health care providers and the reasons for her visits. These include a neck and shoulder injury, chronic pain, stomach problems, headaches, pelvic pain and chest pain. Tr. 66-69. The ALJ is entitled to draw reasonable inferences from the record. *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir. 1984). Based on Whitney's response to the questions on her disability report, it was reasonable for the ALJ to conclude Whitney did not allege any physical impairments.

The medical records indicate Whitney received treatment for a shoulder injury in May 2001, with improvement noted by June 2001. Tr. 110-112. In October 2001, Whitney was treated for aggravation of her shoulder injury and advised to avoid lifting at work. Tr. 109. An MRI of Whitney's shoulder showed some inflammation but no rotator cuff tear. Tr. 108. Whitney complained of shoulder pain after moving from her home in November 2001. She was referred to physical therapy, advised to avoid heavy lifting and prescribed medications. Tr. 107. The medical record does not indicate any long term limitations as a result of her shoulder pain. Whitney also has been treated over the years for abdominal pain, jaw pain, fatigue, chest pain, edema, and bronchitis, asthma, and other conditions. Tr. 117, 247-250, 369, 381, 396, 448-450. The medical records do not indicate any long term limitations from these ailments.

6 - OPINION AND ORDER

Dr. Friedman began treating Whitney in February 2003, for pelvic pain and prescribed hormonal medications. Tr. 133. Dr. Friedman treated Whitney for endometriosis, mild dysplasia, and infection. Tr. 313-317, 320-322, 326-345. Dr. Friedman's notes do not indicate Whitney had any significant limitations as a result of her endometriosis and gynecological problems.

Whitney also alleges the ALJ failed to order a review of her physical conditions by the state agency, and that the state agency failed to review her physical conditions. However, the record indicates the state agency reviewed her medical records and found no medically determinable physical impairments and that her mental and physical conditions were not severe. Tr. 156-158, 195-198. Whitney argues she was denied a full and fair hearing because the ALJ failed to develop the record. However, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d at 459-460 (9th Cir 2001). The medical record is not ambiguous or inadequate.

The ALJ noted Whitney's gynecological problems had been successfully treated. Tr. 20. He also noted she had treatment for transient illnesses and other routine medical care, but no impairments that would affect her ability to work. *Id.* The ALJ noted further that the state agency examiners found no medically determinable physical impairment, and he adopted that opinion. The Commissioner argues that even if the ALJ should have found Whitney had a physical impairment, the impairment was not severe. The court agrees. A diagnosis without significant functional limitations does not compel a finding of "severe" impairment. SSR 85-28. A claimant may experience pain and fatigue, and may have a condition acknowledged with a medical diagnosis without a finding of severe impairment or disability. 20 C.F.R. § 416.921; SSR 96-3p; *See Burch*

v. *Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005); *Key v. Heckler,* 754 F.2d 1545, 1549-1050 (9th Cir. 1985).

The ALJ determined Whitney's physical condition did not cause any functional limitations that interfere with her ability to work, and that finding is supported by the record. Any error made by the ALJ is harmless as it makes no difference in the disability decision. *Parra v. Astrue,* 481 F.3d 1050, 742,747 (9th Cir. 2007).

### B. Mental Impairments

Whitney was treated at South Lane Mental Health (SLMH) in January 2001. A mental health nurse practitioner and a mental health worker, Tom Wheeler, MA, diagnosed Whitney with major depression, recurrent, rule out post traumatic stress disorder (PTSD), anxiety disorder, and a Global Assessment of Functioning (GAF) of 53.[2] Tr. 237-240. Dr. Truhn conducted a psychological evaluation of Whitney on September 23, 2002, for the Self Sufficiency Program of the Oregon Department of Human Services. Tr. 123-131. He noted Whitney had a previous diagnosis of bipolar disorder from a mental health center but was not on any medications and had quit counseling. Tr. 123. He conducted psychological testing which indicated an average I.Q. and a "tendency to exaggerate symptoms and feeling overwhelmed." Tr. 128-129. Dr. Truhn diagnosed major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; dysthymic disorder; posttraumatic stress disorder; personality disorder with borderline features; and a GAF of 48. Tr. 129. He noted Whitney believed she was unable to work because her son's behavior problems. Tr.

---

[2]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed. 2000).

127. Dr. Truhn recommended anti-depressant medications, psychotherapy, and vocational rehabilitation. Tr. 130-131. Dr. Truhn noted Whitney "does not seem to be a candidate at this time for disability." Tr. 131.

Dr. Lahman, a state agency consulting psychologist, completed a Psychiatric Review Technique form on May 5, 2003. Tr. 142-154. He noted Whitney had medically determinable impairments of major depressive disorder, dysthymia, PTSD, panic disorder, and personality disorder. Dr. Lahman found no functional limitations from these impairments. *Id.* This finding makes the impairments not severe. Dr. Anderson agreed with Dr. Lahman's assessment on September 29, 2003. Tr. 142. She also noted there was insufficient evidence of any impairment until September 2002, which is the time of Dr. Truhns's examination. Tr. 181-195.

Whitney sought treatment at South Lane Mental Health (SLMH) on January 12, 2004. Tr. 219. A mental health nurse practitioner, Debra Singleton, and mental health worker, Tom Wheeler, completed a service intake form. Tr. 219-225. They noted Whitney was treated at SLMH in 2001 but kept only ten appointments over a year period. Tr. 220. They diagnosed Whitney with major depressive disorder, recurrent, moderate; PTSD; rule out bipolar disorder; alcohol abuse; rule out panic disorder without agoraphobia; and obsessive compulsive disorder. The medical notes state, "the clinical picture with regard to Lisa is not clear, and should be reviewed after she attends several sessions. . . .. . She has applied for SSI but I have to say it is too early to determine if she is unable to work." Tr. 224-225.

Whitney went to an emergency room for a panic attack on January 20, 2004. Tr. 254. She was diagnosed with an anxiety reaction and medical notes indicated she had just started taking the Wellbutrin. *Id.* On January 30, 2004, Whitney reported to her family practice nurse that her father

had died and she had some panic attacks. Tr. 399. Whitney also reported doing quite well at SLMH. *Id.* Singleton noted in February 2004, that Whitney's depression and anxiety appeared to be stabilizing. Singleton continued the prescription for Wellbutrin and recommended appointments with the agency's social worker. Tr. 212.

Brooke Shafer, a social worker at SLMH, noted Whitney was depressed following her father's death and had homelessness issues. Tr. 217. She also noted Whitney missed several appointments and attended only five appointments between January and November 2004. Shafer noted Whitney apparently went to another agency for services. *Id.* Whitney returned to SLMH on May 9, 2005. Tr. 267. Shafer noted Whitney was homeless, and unable to pay bills or find work. *Id.* Shafer completed a medical source statement on July 13, 2005, stating Whitney had marked and extreme limitations in areas related to concentration, persistence, understanding, memory, and adaption. Tr. 268-269.

Dr. Prescott, a state agency consultant, conducted a psychological examination of Whitney on May 5, 2006. Tr. 476-480. She noted Whitney did not believe her anxiety would interfere with returning to community college. Tr. 476. Dr. Prescott also noted Whitney stated she had panic attacks once a month but was not taking any medications. Tr. 477. She diagnosed Whitney with generalized anxiety disorder and dysthymic disorder. Tr. 479. Dr. Prescott noted Whitney had a normal range of activities of daily living and had fairly good social functioning. Tr. 479. She also noted that Whitney had increased depression and anxiety during her periods of homelessness. *Id.* Dr. Rethinger, a state agency evaluator, completed a Psychiatric Review Technique form on May 18, 2006. Tr. 462-475. He determined her dysthymic disorder and generalized anxiety disorder were not severe impairments. *Id.*

Whitney does not state how the ALJ erred in evaluating her mental impairments. Pl. Opening Br. 5-6. The ALJ found Whitney had mental impairments of generalized anxiety disorder and dysthymia. He found these mental impairments did not significantly limit Whitney's ability to work, and thus were not severe. Tr. 20. The ALJ noted his finding was consistent with the opinion of Drs. Prescott and Truhn, and with the state agency evaluators. Tr. 20, 22. He further noted that although Whitney had periods of "situational distress," her functioning was not limited. Tr. 21. The ALJ also noted no psychologist articulated any work-related mental limitations. Tr. 22. Although Dr Truhn assigned a GAF score of 48, he noted Whitney could work. *Id.* Dr. Prescott noted in 2006 that Whitney had normal daily functioning, took no psychotropic medications, and received no mental health treatment. *Id.*

The ALJ discussed and discounted the medical source statement of Brooke Shafer. Tr. 21. He found Shafer's opinion inconsistent with the opinion of the examining psychologists and of no weight. The ALJ noted social workers are not "medical sources." 20 C.F.R. § 416.913. He noted further that Shafer marked 13 out of 20 items on the medical source statement as "marked" or "extreme" limitations, indicating Whitney was profoundly incapacitated. Tr. 21. The ALJ found these limitations contrary to the psychologists' findings that Whitney was able to maintain a home for herself and two dependent children. *Id.* He also noted Whitney had only around ten appointments with Shafer. The ALJ found the record indicated Shafer spent time assisting Whitney in acquiring other benefits and services with no indication Whitney was as profoundly incapacitated as noted on the medical source statement. The record supports the ALJ's findings that Whitney's mental impairments were not severe.

11 - OPINION AND ORDER

### C.    Conclusion

The ALJ's finding that Whitney did not have any severe mental or physical impairments is supported by substantial evidence in the record and free of legal error.

### **CONCLUSION**

Based on the foregoing, the ALJ's decision finding Whitney not disabled under the Social Security Act is based on correct legal standards and supported by substantial evidence.

IT IS SO ORDERED.

Dated this  9   day of November  2007.


                                                      /s/ Ann Aiken
                                                     Ann Aiken
                                              United States District Judge

12 - OPINION AND ORDER